SANDERS FORD v. THE STATE.

No. 1398. Decided November 29, 1911.

Rehearing denied January 10, 1912.

**1.—Murder—Charge of Court—Negligent Homicide—Intent to Kill.**

Where, upon trial of murder, the court submitted the issue of negligent homicide, and the intent to kill, in a proper manner, there was no error.

**2.—Same—Charge of Court—Self-Defense—Murder in the Second Degree.**

Where, upon trial of murder, the court submitted the issue of self-defense, and murder in the second degree, of which the defendant was convicted, there was no error.

**3.—Same—Charge of Court—Manslaughter—Means Used.**

Where, upon trial of murder, the court in submitting manslaughter, instructed the jury that if the means used were not reasonably calculated to accomplish the death of the deceased, etc., they should acquit the defendant, he could not complain under the facts that he only used small shot and had no intent to kill.

**4.—Same—Charge of Court—Specific Intent to Kill—Sufficiency of the Evidence.**

Where, upon trial of murder, the charge of the court in connection with special charges submitted presented every theory of the defense, the conviction must be sustained, although there was evidence on the part of the defense that he had no intent to kill.

Appeal from the District Court of Grimes. Tried below before the Hon. S. W. Dean.

Appeal from a conviction of murder in the second degree; penalty, twelve years imprisonment in the penitentiary.

The opinion states the case.

*McDonald Meachum* and *W. W. Meachum*, for appellant.—On the question of want of intent to kill: Thompson v. State, 24 Texas Crim. App., 383.

On the question of the court's charge on implied malice: Best v.

State, 58 Texas Crim. Rep., 327; Ellison v. State, 12 Texas Crim. App., 557; Greta v. State, 9 Texas Crim. App., 429.

On the question of the court's charge on means used: Galligher v. State, 55 Texas Crim. Rep., 50.

.C. E. *Lane,* Assistant Attorney-General, for the State.

HARPER, JUDGE.—Appellant was indicted and tried for murder, being convicted of murder in the second degree, and his punishment assessed at twelve years confinement in the State penitentiary.

The evidence would show that appellant and deceased, Will Turner, had a difficulty on Friday evening, in which deceased gave defendant a whipping, and that on the next morning defendant went near the place where deceased was at work and shot and killed him. The State's evidence is, that while deceased and some companions were at work in a field planting cotton, the shooting took place. Doc Williams testified: "Me and Will Turner were opening and Ed Brooks and Will Taylor were planting. What called my attention, Will Taylor looked up and seen appellant and hollered to him not to shoot in the crowd, and hollered to Will Turner to look out. Sanders Ford was at the lower end of the bushes next to the fence. I don't know how far he was from Will Turner when he killed him, but he wasn't no piece. He was over inside the woods and we drove up to the fence, and got right at the fence and was ready to turn around at the time he shot. When Will seen him, he dodged behind me, and Sanders Ford shot him, and Will whirled to run and fell, and after he fell he shot him again, and after he fell he got up and began to run across the field. Will Turner ran about forty-three or forty-five steps, I reckon, before he fell and died. Sanders Ford was on the outside of the fence, right over in the pasture, in the woods. We had gotten nearly out to the end of the rows and were nearly ready to turn around, and Will Taylor, who was planting cotton, saw Sanders and hollered to him not to shoot. I was facing Sanders at the time, and when Will Taylor hollered, Will Turner jumped behind me and Sanders shot then. We both whirled to run and then he fell. I guess Sanders hit him when he was down on the ground. He was shot from here on up (indicating). After he quit shooting, we both jumped up and ran. I did not get hit. Will Turner did not have any gun or anything of the kind in his hand when he was shot. I didn't see no gun. I could have seen it if he had one. He did not have any. He did not attempt to draw a gun or pistol or anything. He did not say anything to Sanders Ford. Sanders Ford and Will Turner had had a fight the Friday evening before that, in the same field, up at the other side. That was in the field where Will Turner worked. When he got through fighting, Sanders got up and went off and told Will Turner that that was all right, that he would see him again."

Will Taylor testified: "Sanders Ford killed deceased. We were all planting cotton that morning, and were going on out to the end of the row, and before we got to the end of the row—I was behind the planters, and we were all plowing on, going to the end of the row, and I was behind, and my mule looked up, and I looked ahead of the mule, and I seen this Sanders Ford on the outside of the fence, in the bushes. He had a gun in his hand. I said, 'Look out, Willie; look out, Sanders, don't shoot in this crowd.' Then Will went to dodging, and he dodged behind Dock Williams. Sanders said, 'Oh, yes,' and shot. Will was running and dodging behind Dock Williams. After Sanders shot the first shot Will kept on running and dodging behind Dock, and they fell, and Will fell across him. I don't know what Sanders was doing at that time, but he made the second shot. Will Turner did not make any effort to get a gun, and he did not have any gun in his hand or about his hand. He didn't have any gun on his person after he was killed and he ain't had no gun yet."

Deceased was shot in the hip, in the side and other parts of the body, one shot striking him in the forehead. Defendant testified in his own behalf: "On Friday evening I went over there to the Scott place, which Henry Slaton had in charge, and I went there about four o'clock, and when I left there, he told me to go and attend to my mule, and I told him I had to come through the Hutcheson farm to go home, and as I was coming through there, I seen these four men sitting on their plows about three or four hundred yards before I got to them, and I stops trotting, and I says I will walk along, and by the time I get there they will be gone, and I walked along and rode up two or three steps from them, and I says, 'Good evening,' and they said, 'Good evening,' and Will Turner came walking towards me, and says, 'Wait a minute,' and I says, 'I ain't got time,' and he says, 'Wait, I want to see about this mule,' and I says, 'You know this mule ain't none of mine,' and he says, 'Do you want to trade?' and I said, 'No,' and about that time, he slapped the mule side the head with his hand, and the mule went round and round, and threw me off, and I fell off, and got up, and says, 'Look out,' and he slapped me, and when he slapped me, he hit me a time or two, and I says, 'Let me alone,' and Dock Williams says, 'Will; I believe you are a coward,' and about that time, he hit me again, and I thought he never would stop beating me, and I left there a crying, and with one hand over my eye, to keep the dirt from running in my eye. I went home and put up the team, and by that time the sun was down, and I didn't go nowhere, but come on in the house. I did not say anything to Will Turner, but just left there a crying, asking him all the time to let me alone, and he said he would when he got ready. I never told him that I would see him again, or anything of that kind. I never breathed it. I stayed at Henry's that night. Henry told me that evening what to do the next morning, and I got up as usual and got my gun and

went on down in the pasture, and when I got outside of the farm, I was in the pasture, and I kept right on. That was a lane and the trail was in it. It was in the Scott field, and I went on down there, and kept on around and was in the old road, coming right down the side of the wire fence, and had never stopped walking, and this here Will Taylor was coming driving up, and all of them, and he says, 'Look out Will, there is Joker, shoot, shoot!' and Will Turner, he turned and when he turned, he made the first fire, and then I shot. He fired at me with a pistol, a thirty-eight, and then I fired. After the fight was over, I wheeled and come on back to the house. I saw Frank Bates just as I walked up from down there, and run up from over there up to the house. When I saw Mr. Bates, I did not know whether the man was dead or not. I told Mr. Bates who shot first, and I told Mr. Bates what I shot him for. I didn't have no intention of killing Will Turner, or nothing of that kind. I was just aiming to shoot him in the leg somewhere. I had bird shot in my gun, and didn't aim to kill him, and was not thinking about meeting him down there at all at that time."

This testimony presents the theory of the State and defendant. Defendant is corroborated by no witness in the statement that deceased was armed. However, a witness, John Shannon, testified that on Sunday, before the killing on Saturday, deceased had told him he was going to whip defendant, and remarked, "If I start at him, I will whip or kill him," and that he had informed defendant of this threat. F. T. Bates testified that he saw defendant shortly after the killing, and the defendant first told him that he shot deceased because deceased had beaten him up the evening before. The witness says that after he had told defendant he was not going to let him leave, defendant then claimed that deceased had shot at him at first with a pistol. This witness says, however, he heard the shots and there were but two shots, and they were both shotgun shots.

Appellant requested but one special charge, presenting the issue of negligent homicide. This was given by the court, and in it the jury was instructed: "And in this case you are instructed, that if you shall find from the evidence, beyond a reasonable doubt, that the defendant did unlawfully attempt to commit and was committing an assault upon Will Turner, with a gun, without any intention to kill him, the said Will Turner, did cause the death of the said Will Turner, by then and there shooting the said Will Turner with a gun, whereby he was killed; there being no apparent danger then and there of causing the death of said Will Turner thereby but with no intent to *murder* him, the said Will Turner, as murder has been hereinbefore defined in this charge, you will find the defendant guilty of negligent homicide of the second degree, and assess his punishment therefor as aforesaid; but if you shall not so find, bearing in mind that the burden of proof is upon

the State to prove this issue beyond a reasonable doubt as in every other issue, you will find the defendant not guilty of this offense."

This sufficiently presents the issue of whether or not the defendant had the intent to kill, and the jury finds against defendant in this contention.

The court presented the issue of self-defense in a fair manner, and defendant does not complain of this feature, except in a general way, such as that the court erred in paragraph —— of the charge. This we can not consider.

There is some criticism of the charge on murder in the second degree, but when we take the entire charge, it is not subject to the criticism, but is a fair presentation of the law applicable to this case.

After submitting murder in the first and second degree, and manslaughter, the court instructed the jury: "In this case, you will take into consideration the means used by the defendant in the commission of the offense with which he is charged, if you believe from the evidence, beyond a reasonable doubt, that he committed same, and if they be not such as would be reasonably calculated to accomplish the death of the deceased by the mode and manner in which they were used, then no intent to kill should be presumed from their use." The objection being that same was upon the weight to be given the testimony. We do not think the charge subject to this criticism, and when we consider the testimony elicited by defendant, that he had used small shot and had no intention to kill, and that he offered a charge on negligent homicide that was given, we think it was proper for the court to thus charge the jury—at least defendant ought not and can not complain that this issue was submitted. Certainly, giving the jury an opportunity to find that although he shot deceased twice with a shot gun, yet they could find, if they felt justified in so doing, that as he used only small shot, he had no intent to kill.

The charge also fully presents the issue of manslaughter, and submits the case properly on whether or not the acts and conduct of deceased, taking into consideration all the facts and circumstances in evidence, rendered defendant's mind incapable of cool reflection, and produced in his mind sudden anger, rage, sudden resentment or terror. Every theory of defendant's defense was fully presented in the charge, and while the jury might have found, under the evidence of defendant and his witnesses, that he had no intent to kill, yet they did not do so, and as this issue was fully and fairly presented, the charge presents no error.

Appellant's counsel, in an able argument, contends that the evidence does not show a specific intent to kill, but that on the contrary, would show that, if defendant did not shoot in self-defense, he intended to shoot deceased in a part of the body with small shot that could not result in death. Unfortunately, appellant did not strike deceased where he says he intended to shoot him, but struck him in such a vital spot that death resulted in a few moments. When a person uses an instru-

ment that any reasonable person knows that death may result from its use, and death does result, the law presumes that death was intended. While the defendant's evidence raises the issue, and he had a right to have it submitted to the jury, and which was done in this case, yet the evidence for the State, as herein copied, would indicate that defendant went to a fence row, and, surrounded by bushes, waited until deceased approached near him, and then fired on him—the last time while he was down or running from him. And this, too, according to the State witnesses, when there was no occasion to shoot, except his anger because of the whipping he had received the day before, and if this be true, such evidence amply supports a verdict of murder in the second degree.

There are no exceptions to the evidence, and the charge of the court, in connection with the special charge given at defendant's request, presents every issue fairly.

The judgment is affirmed.

*Affirmed.*

[Rehearing denied January 10, 1912.—Reporter.]